Yoder *v.* T. F. Scholes, Inc., Appellant.

Argued April 19, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused August 28, 1961.

*Joseph E. DeSantis,* with him *Henry M. Koch,* and *McGavin, DeSantis & Koch,* for appellant.

*Martin W. Binder,* with him *John W. Dry,* and *DeLong, Dry & Binder,* for appellee.

OPINION BY MR. JUSTICE BOK, June 26, 1961:

This case was tried on a waiver of jury trial and resulted in a verdict, with adjudication, for the plaintiff in the sum of $6522.90. Exceptions were filed by defendant and after argument were dismissed. Judgment was entered for plaintiff on the verdict and defendant appealed.

The facts are that plaintiff, a registered engineer, was employed by the defendant as general superintendent and civil engineer from January 1, 1953, to December 16, 1957. Sometime during that period the defendant obtained a construction job for the United States Army. Work on this job was started in November, 1953, and was substantially but not wholly completed by September, 1955.

In September, 1953, the defendant orally agreed with the plaintiff to pay him for this job a commission of four per cent of the net profit, before taxes, in addition to his regular salary. The defendant also agreed with another engineer, named Buchanan, to pay him a similar commission.

On or about October 18, 1955, at the request of Buchanan, a meeting was held at the home office of the defendant in Reading, attended by various officers of the defendant company and by Buchanan and the plaintiff. The purpose of this meeting was to discuss the final amount of bonus to be paid to Buchanan and the plaintiff for the Army job. The bonus for Buchanan, as agreed upon at this meeting, after a discussion of many figures relating to overhead costs, estimated profit and the like, was $12,330.58.

The defendant paid to plaintiff between December, 1955, and September 26, 1956, as commission, the total sum of $5,807.63, taking the position that this was the only amount owed to him, representing four per cent of the net profit on the Army job, before taxes, as finally computed by defendant.

The plaintiff, contending that the agreement reached with Buchanan at the meeting of October 18, 1955, also applied to him, demanded additional payment which would total $12,330.58. This demand was refused by defendant and plaintiff filed suit.

The Court found as a fact that defendant had agreed to pay plaintiff the same bonus as Buchanan at the meeting of October 18, 1955, and entered a verdict in favor of the plaintiff for the sum of $6,522.90, with interest.

The central question is whether there was a new agreement that replaced the original. We think that there was and that a valid novation occurred. The case was pleaded as an accord, with a new promise acting as a satisfaction, in settlement of an existing dispute. We regard it rather as the substitution of one contract for another and the application of the terms of the new contract. Our conclusion is the same as that of the court below, which also decided the case as an accord and satisfaction.

The essentials of a novation are (1) the displacement and extinction of a valid contract, the substitution for it of a valid new contract, either between the same parties or by the introduction of a new creditor or debtor, a sufficient legal consideration for the new contract, and the consent of the parties: *Jos. Melnick B. & L. Assn. v. Melnick,* 361 Pa. 328 (1949), 64 A. 2d 773; *Lamb v. Allegheny County Inst. Dist.,* 363 Pa. 66 (1949), 69 A. 2d 117; *Le Bar v. Patterson,* 123 Pa. Superior Ct. 491 (1936), 187 A. 278.

He who asserts a novation must properly plead and prove it: *Taylor v. Stanley Co. of America,* 305 Pa. 546 (1932), 158 A. 157; *Parish Mfg. Corp. v. Martin-Parry Corp.,* 285 Pa. 131 (1926), 131 A. 710.

The complaint could be clearer but it is adequate. Paragraph 5 avers an unliquidated claim of 4% of net profit before taxes. Paragraph 6 avers liquidated compensation at 4% on an agreed amount of net profit. The answer denied the new figure for the profits, alleging that the plaintiff's bonus should be calculated at 4% of a lower figure arrived at by defendant. The original contract was admitted.

The court below found that the parties made and agreed to both contracts. Agreement to the new one was shown by the amount of Buchanan's bonus and by defendant's admission that plaintiff's bonus was to be the same. Plaintiff testified as follows about what Dr. DeWire, defendant's president, said at the original conference in October, 1953: "During this discussion Dr. DeWire made the statement that anything Mr. Buchanan would get in the way of bonus, 'Mr. Yoder will get the same amount.'" The court then found that at the meeting in October, 1955, Mr. Buchanan's bonus was based on 4% of a definite net profit, and hence that it applied also to the plaintiff.

The record fully supports these findings. Defendant admits that Buchanan's bonus was fixed at 4% of

a net profit of $308,264.46, which is the basis of plaintiff's claim for himself, on the theory that both men were to receive alike. Defendant, while admitting the deal with Buchanan, denied that it extended as well to plaintiff. This, however, is no great step to take in view of defendant's admissions that it agreed originally to treat Buchanan and plaintiff the same and later that it agreed to give Buchanan the larger bonus. Although Buchanan's testimony wavered, it was within the province of the fact-finder to establish his meaning, and his following statement gives clear footing for the finding: "When I left that conference I was of the opinion that I was to receive $12,000 and some odd dollars and Mr. Yoder was to receive the same amount." Yoder, the plaintiff, testified similarly, as above noted.

Consideration for the new contract appears in the liquidation, before completion of the job, of an unliquidated amount by which the contract had to be calculated, by the reconciliation of a dispute over the size of the net profits, and by the substitution of one unexecuted contract for another: *Gunther v. Atlantic Refining Co.,* 277 Pa. 289 (1923), 121 A. 53; *Kirk v. Brentwood Manor Homes, Inc.,* 191 Pa. Superior Ct. 488 (1960), 159 A. 2d 48.

Appellant has raised various minor questions, but they are without merit and their disposition is implicit in our discussion above. The only remaining question is whether the court abused its discretion in not granting appellant's motion for a continuance. The original contract was in 1953, the new contract in 1955, defendant's counsel withdrew on January 23, 1959, and shortly afterward present counsel were retained. The case came on for trial on February 17, 1959. There was no question of absent witnesses, and the central point of the case is not one of unusual complexity. Appellant cites *Bierstein v. Whitman,* 355 Pa. 515 (1947), 50 A. 2d 334, but a glance at the opinion will show that

there the attorney was forced on trial and was not then given until the next day to get his witnesses. That is far from the situation before us. Rather do we fail to see any abuse of the court's discretion, as in *Brookside Distilling Products Corp. v. Monarch Wine Co. of Georgia,* 367 Pa. 8 (1951), 79 A. 2d 242. We might also observe that since the case was tried without a jury the court arrangements could be flexible enough to accommodate actual distress of counsel.

Judgment affirmed.