Stander et al., Appellants, *v.* Kelley.

Argued October 4, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

2

*James E. Beasley,* for appellants.

*William C. Sennett,* Attorney General, with him *Edward Friedman,* General Counsel, for Commonwealth, appellee.

*Fairfax Leary, Jr.,* and *Reed, Smith, Shaw & McClay,* and *Obermayer, Rebmann, Maxwell & Hippel,* and *Fox, Rothschild, O'Brien & Frankel,* for The General State Authority, under Rule 65.

*W. J. Krencewicz,* for interested person, under Rule 65.

OPINION BY MR. CHIEF JUSTICE BELL, October 11, 1968:

This is an appeal from an Order denying a preliminary injunction. In such a case, the issue before this Court and our scope of review is whether there was a clear abuse of discretion, or palpable legal error, and the merits of the case are not considered or decided: *City Line Open Hearth, Inc. v. Hotel, Motel & Club Employees' Union,* 413 Pa. 420, 436, 197 A. 2d 614; *McDonald v. Noga,* 393 Pa. 309, 311, 141 A. 2d 842.

In *McDonald v. Noga,* 393 Pa., supra, the Court said (page 311): "On an appeal from a decree granting or refusing a preliminary injunction, the appellant has a very heavy burden to overcome; such a decree will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the

court below: Aldrich v. Geahry, 360 Pa. 376, 379, 61 A. 2d 843. . . ."

In *City Line Open Hearth, Inc. v. Hotel, Motel & Club Employees' Union,* 413 Pa., supra, the Court said (page 436) : "On an appeal from the grant or refusal of a preliminary injunction, the test in this Court is well settled. We consider and *decide, not the merits of the case** but only whether there were *any apparently reasonable or justifiable grounds*** for the action of the Court below; and if such exists, the Decree (or Order) will be affirmed unless the record presents palpable legal error: Philadelphia v. Philadelphia Transportation Co., 386 Pa. 231, 236, 126 A. 2d 132; see also Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 145, 189 A. 2d 271; Sherwood v. Elgart, 383 Pa. 110, 117 A. 2d 899; Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp., 410 Pa. 214, 189 A. 2d 180; Lindenfelser v. Lindenfelser, 385 Pa. 342, 123 A. 2d 626."

We place our decision on the well recognized ground that there was no clear abuse of discretion, or palpable legal error.

Order affirmed, each party to pay own costs.

---

CONCURRING OPINION BY MR. JUSTICE JONES:

I would affirm the decree of the court below which denied injunctive relief. However, in so doing, I neither consider nor determine the merits of the issues raised in the court below.

Affirmance of this decree seems mandated for two reasons. First, the relief sought in the court below was to restrain submission to the electorate at the Primary Election of April 23, 1968 for approval or disapproval of certain amendments to our Constitu-

---

\* Italics, ours.

\*\* Italics in original Opinion.

tion; such election has been held, the relief sought cannot be now granted and we, therefore, are presented with no justiciable controversy on this appeal. Second, it has long been the established and salutary rule that on an appeal from the denial of a preliminary injunction the appellate court will not reverse if there existed *any* reasonable ground to sustain the denial of injunctive relief and the court below did not commit any *palpable* error of law. See: *City Line Open Hearth, Inc. v. Hotel, Motel & Club Employees' Union,* 413 Pa. 420, 197 A. 2d 614 (1964) ; *McGinley v. Scott,* 401 Pa. 310, 164 A. 2d 424 (1960). The court below did have a reasonable ground for and committed no palpable legal error in denying injunctive relief.

I would affirm the decree without prejudice to appellants to raise any issues involving the merits of this controversy in another more appropriate proceeding.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I am of the view that the lower court had apparent reasonable ground for refusing a preliminary injunction in this case and, therefore, under the long established rule limiting our scope of review, we must affirm. However, the case presents serious questions which should be resolved without further undue delay. This can be accomplished by this Court assuming original jurisdiction and issuing the special writ of certiorari requested in a related case.

I earnestly urge the Court to grant the writ and schedule argument thereon at the earliest possible date.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I dissent in these cases from the decisions of this Court affirming the decree of the Court of Common Pleas of Dauphin County and refusing the petition for

the issuance of a special writ of certiorari for original jurisdiction. Since both actions involve the same subject matter I will write only one Opinion which will apply to both proceedings.

My learned Brother JONES in his Concurring Opinion in the Dauphin County case states that he affirms without prejudice to the appellants "to raise any issues involving the merits of this controversy in another more appropriate proceeding." I interpret this to mean that Justice JONES is not entirely satisfied that the new Judiciary Article conforms to established constitutional principles and therefore he is willing the appellant raise the issues in another future legal action.

I would meet the issue head-on—now. It is much easier to straighten out a malforming constitutional structure while the concrete is wet than it would be after it has hardened into grotesque solidity. The time to straighten out a tree damaged in the planting is while it is still growing and not after it has attained a full but convoluted height.

The Constitutional Convention of 1968 (for convenience hereinafter referred to as the ConCon, the name by which it was constantly designated in the newspapers) exceeded its authority. It must never be overlooked that the ConCon was a limited convention, not a plenary one. It was bound by the Constitution of 1874 and had no authority whatsoever to go beyond the limitations spelled out in the Enabling Act No. 2 of March 15, 1967. That Act, approved by the people, specified the areas in which the ConCon could operate in the judicial field. Those areas were as conspicuously circumscribed as if they were surrounded by walls. The ConCon had no authority whatsoever to go beyond those walls. What were the circumscribed areas? ADMINISTRATION, ORGANIZATION, SELECTION, TENURE. The ConCon broke down those walls and

trespassed into the area of JURISDICTION, where it had no right to be *at all.* This is so fundamental and elementary that I cannot but be amazed that this Court treats the matter in so summary a fashion, especially since the ConCon's trespassing involves the very lifeblood of this Court itself, jurisdiction. The ConCon had no more right to change our jurisdiction than it would have had to legislate the judicial system to be inaugurated on the Moon if and when we land our valiant astronauts there.

Article V, Section 1 of the Constitution of 1874 declares the jurisdiction of this Court to be: "Article V. Section 3. The jurisdiction of the Supreme Court shall extend over the State, and the judges thereof shall, by virtue of their offices, be justices of oyer and terminer and general jail delivery in the several counties; they shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of habeas corpus, of mandamus to courts of inferior jurisdiction, and of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the State, but shall not exercise any other original jurisdiction; they shall have appellate jurisdiction by appeal, certiorari or writ of error in all cases, as is now or may hereafter be provided by law."

That Article was inviolable, it was sacred to the divine principles of justice, it was the altar on which rested the guarantees of the freedom of a free people. Because, talk as much as one may about liberty and the unfettered conscience of man, unless one has a court within which to demand those rights they may as well be printed on rubber balloons that waft into the empty air and blow away over the ocean of endless wastes.

The ConCon, although not empowered to touch the 1874 constitutional provision on judicial jurisdiction,

not only touched it, but ripped it apart. It deprived our Court of original jurisdiction over habeas corpus, quo warranto, mandamus, and corporate injunction cases. Under what authority? By what mandate? Ever since I had the honor of becoming a member of this Court, I have glowed inwardly in the realization that if anyone was unjustly imprisoned or deprived of his liberty, and no Common Pleas Court was open to issue a writ of habeas corpus, I was always available to unlock jail doors or sever the bonds of any illegal detention, but not now, according to ConCon.

Indeed, the writ of habeas corpus has completely disappeared from the Constitution, according to Con-Con. Nowhere in the vast undulating prairie of its some 8000 words can one find a single blade of grass stamped *habeas corpus,* even though, dating as far back as Magna Charta, Habeas Corpus has always been the mightiest oak in the whole domain of individual rights.

It may be argued, and has been argued, that the jurisdiction of the Courts, under the new judiciary article, remains as it was. But this is a play in dialectics because a Constitution speaks affirmatively and not negatively, it imparts principle of government by specific, objective statements, and not by inference. When the ConCon erased from the Constitution all language on the original jurisdiction of the Supreme Court and said, through Sec. 2(c) that the Supreme Court "shall have such jurisdiction as shall be provided by law," it made the Supreme Court subservient to the Legislature, this in violent violation of the basic principle of American government, that each of the three departments shall have sovereign authority unto itself.

But the supporters of the new Judiciary Article asserted and still assert that the Supreme Court retains its original jurisdiction and point to Section 10(c) which provides: "(c) The Supreme Court shall

have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution *and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace. . ."* (Emphasis supplied)

It will be noted by the italicized words that the Supreme Court becomes the servant of the Legislature. We have supreme power but it is the Legislature which determines jurisdiction. Why, jurisdiction is the very essence of judicial power! Take away jurisdiction and the courthouse becomes brick, mortar and form.

Nor is the Supreme Court's jurisdiction saved by Section 1 of the Schedule to the Judiciary Article which states: "The Supreme Court shall exercise all the powers and, until otherwise provided by law, jurisdiction now vested in the Supreme Court. . ."

Here again we have the limiting words unless "otherwise provided by law," that is, unless the Legislature determines to limit our jurisdiction. If the Legislature may limit our jurisdiction it may control the functions of the Supreme Court. I must repeat my amazement that the majority of this Court can take so lightly such a hazard to the independent functioning of the highest Court in the Commonwealth.

In *Menges v. Dentler,* 33 Pa. 495, this Court, speaking through the distinguished Chief Justice LOWRIE, said: ". . . These provisions are, therefore, imperative

limitations of legislative authority, and imperative impositions of judicial duty. To the judiciary they say: —You shall administer justice to all men by due course of law, and without sale, denial, or delay; and to the legislature they say:—*You shall not intermeddle with such functions. . ." Menges v. Dentler,* 33 Pa. 498 (1859) (Emphasis supplied)

The ConCon has intermeddled with jurisdictional functioning and that intermeddling should be declared unconstitutional—now!

The Pennsylvania Bar Association attempted to hold inviolate the separation of powers between the Legislative and Judicial Departments by its Delegate Proposal No. 1000, Section 2(b) and 14(b), which stated: "The Supreme Court shall be the highest court of the Commonwealth and shall have final appellate jurisdiction. It shall have no original jurisdiction except as may be expressly provided in this constitution. It may assume jurisdiction of actions pending in any other court at any stage of the proceedings. It shall have the power to issue all writs necessary or appropriate in aid of its appellate jurisdiction. . .

"The Supreme Court shall have power to prescribe rules in all civil and criminal actions and proceedings for all courts, governing administration, practice and procedure, including rules of evidence, appeals, appellate jurisdiction including time for appeals, and the issuance of all writs necessary or appropriate in aid of the jurisdiction of the respective courts. These rules shall have the force and effect inconsistent therewith."

Somehow these safeguards were washed overboard in the storm which engulfed the ConCon as it struggled to get into port before Adjournment Day.

The Pittsburgh Press, editorializing on the New Judiciary Article before adoption, declared that the invasion by the Legislative Department into the Judi-

ciary Department of the State Government constituted a "fatal flaw" in the Judiciary Article. Its exposition is so able and so unanswerable in its logic that I incorporate it by reference into this dissenting opinion, a salient portion of which reads: "It [the new Judiciary Article] could destroy the pattern of government which has served us throughout our history, the system of three independent, co-equal branches of government—the executive, legislative and judicial—all exercising separate powers defined in the constitution itself. It would do this by making the entire judicial establishment subservient to the Legislature. For no matter how you slice the 8190 words in this single proposal, this is what they spell.

"Unaccountably, the drafters of the judicial article failed to provide a guarantee of any specific powers for the State Supreme Court of any of the lower courts. In fact, adoption of this proposal would rub out even those provisions of the present constitution which specify the basic jurisdiction and powers of the State Supreme Court. The proposal contains no language comparable to that of the U. S. Constitution which defines the jurisdiction and powers of the Federal Courts.

"In section after section, as applied to the State Supreme Court on down, the proposal states that the various courts shall have 'such jurisdiction as shall be provided by law' or shall retain their present jurisdiction 'until otherwise provided by law.' In other words, the entire judicial system would be placed under the control of the Legislature."

I believe that it is the duty of this Court to take original jurisdiction at once of an issue which questions our very authority to function as an appellate court. Nothing could be more vital to the authority of this tribunal, which happens to be the oldest Supreme Court in the United States.