Advanced Management Research, Inc. *v.* Emanuel, Appellant.

386

Argued May 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Pace Reich,* with him *Modell, Pincus, Hahn & Reich,* for appellant.

*Charles I. Thompson, Jr.,* with him *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1970:

A petition was presented in the court below seeking enforcement of a decree entered in an equity action. Preliminary objections to the petition challenging the jurisdiction of the court were overruled, and this appeal followed.

The relevant facts may be summarized as follows:

Advanced Management Research, Inc., [AMR] is engaged in the business of conducting "management seminars" for corporate executives. It advertises extensively by means of printed brochures which are mailed to corporate enterprises. Prior to June 26, 1968, Edward E. Emanuel was the president of AMR and a significant minority stockholder. His employment contract contained a non-competition covenant for a period of two years after leaving AMR. In June of 1968, this employment was terminated and thereafter Emanuel began doing business as Continuing Management Education Company [CME], a business which is engaged in activities similar to AMR's.

In October 1968, AMR brought an action in equity against Emanuel alleging that Emanuel had breached the non-competition covenant in his contract and that he was advertising his company's seminars by means of brochures which were "deceptively similar" to AMR's. The complaint sought injunctive relief. Emanuel brought two counteractions against AMR.

AMR's suit was set for hearing on November 8, 1968, but before trial a settlement was reached and the following "Memorandum of Agreement" was executed by the parties:

MEMORANDUM OF AGREEMENT

"Agreement made this 8th day of November 1968 between Advanced Management Research, Inc. ("AMR"), and Edward E. Emanuel ("Emanuel"):

"1. AMR and Emanuel will exchange mutual releases respecting the three suits pending in Common Pleas Court, all of which will be dismissed with prejudice.

"2. Emanuel will be free to compete with AMR in every respect permitted by law. Without limiting the generality of the foregoing, Emanuel will immediately change his logotype.

"3. AMR will issue its corporate note payable to Emanuel in the amount of One Hundred Ten Thousand Dollars ($110,000) payable as follows:

| | |
|---|---|
| On or before November 15, 1968 | $25,000 |
| On or before March 10, 1969 | 25,000 |
| On or before July 10, 1969 | 25,000 |
| On or before January 10, 1970 | 25,000 |
| On or before July 10, 1970 | 10,000 |

It is understood that Emanuel may retain the personal property described in the draft of agreement given to Emanuel on or about July 12, 1968.

"4. Emanuel will deliver to AMR, endorsed in blank or accompanied by such assignment as may be necessary to transfer title to AMR free and clear of all liens, claims and encumbrances, his certificate representing the 10,000 shares of stock of AMR owned by Emanuel.

"5. AMR will procure from Nathan Cummings a release of Emanuel's contingent obligation on AMR's note to Cummings dated July 15, 1968.

"6. Closing will be on or before November 15, 1968.

> Advanced Management Research, Inc.
> By: Anthony E. Whyte
>      Edward E. Emanuel
>      Edward E. Emanuel."

On November 13, 1968, the lower court entered a decree which incorporated the terms of the above agreement and directed that it be performed according to its terms. The court also approved the form of the note to be executed by AMR, approved the form of the mutual releases to be signed by the parties and ordered that the instant action, together with the two actions brought by Emanuel, be marked settled, discontinued and ended with prejudice.

On the following day, a "Supplemental Memorandum of Agreement" was executed by the parties. This

document made certain modifications in paragraphs 3 and 4 of the original agreement.[1]

Thereafter, releases were exchanged between the parties and praecipes to settle, discontinue and end all of the litigation were exchanged and filed. On January 9, 1970, AMR filed a petition alleging Emanuel had not complied with the settlement agreement and decree entered on November 13th. A rule was requested to show cause why the decree should not be enforced. Emanuel interposed preliminary objections challenging the jurisdiction of the court to entertain the petition.

---

[1]SUPPLEMENTAL MEMORANDUM OF AGREEMENT

"The Memorandum of Agreement between Advanced Management Research, Incorporated ("AMR") and Edward E. Emanuel ("Emanuel") dated November 8, 1968, is hereby supplemented in the following respects: '1. The note referred to in paragraph 3 of the Memorandum of Agreement will carry interest at the rate of 6% per annum on the unpaid balance payable on the respective installment due dates. 2. It is agreed that $90,000 of the amount payable to Emanuel under the aforesaid note is allocable to the purchase by AMR of Emanuel's stock referred to in paragraph 4 of the Memorandum of Agreement, and the balance ($20,000) is allocable to Emanuel's claim against AMR for compensation which was the subject of his suit against AMR (Court of Common Pleas, October Term, 1968, No. 2074). It is further agreed that the personal property to be retained by Emanuel under Paragraph 3 of the Memorandum of Agreement has a fair market value of $2,500 and that this sum is likewise to be allocated to Emanuel's claim for compensation against AMR. No amount is allocable to the claim of Emanuel against Anthony E. Whyte, Raymond E. Hebert, Jr., Mortimer M. Caplin and Nathan Cummings, which was the subject of Emanuel's suit in Court of Common Pleas, October Term, 1968, No. 2073. 3. It is agreed that at closing AMR will issue 5,000 shares of its stock to Provident National Bank, Escrow Agent, to be held by Provident under the terms of an escrow agreement in the form attached hereto. It is understood and agreed that Emanuel will have no rights as a stockholder of AMR unless and until AMR shares are issued to him pursuant to the escrow agreement. Advanced Management Research, Incorporated, By: Anthony E. Whyte, President. Edward E. Emanuel, Edward E. Emanuel."

These objections were overruled and Emanuel appealed. We affirm.

The essence of Emanuel's argument on appeal is that the lower court lacked jurisdiction to enforce the agreement which was incorporated into its decree of November 13, 1968. The basis of this allegation is two-fold: Emanuel first argues that the "Supplemental Memorandum of Agreement" amounted to a novation, which extinguished the original agreement embodied in the court's decree. We find this contention devoid of merit. This agreement expressly stated that it merely "supplemented" the agreement of November 8, 1968. And the tenor of the three provisions which make up this agreement amply illustrate that this was the case. The first provision merely provides that the instalment note referred to in paragraph 3 of the original agreement would be interest bearing at the rate of 6% on unpaid balances. The second provision is a gloss on paragraph 4 of the original agreement. It provides that $90,000 of the $110,000 payable to Emanuel under the note would be allocable to the purchase by AMR of Emanuel's stock. The third provision merely states that AMR would post one-half of the 10,000 shares of AMR stock owned by Emanuel and to be transferred by him to AMR (pursuant to paragraph 4 of the original agreement) with an escrow agent, thereby giving Emanuel a security interest in the stock.

This is the entire Supplemental Memorandum. It does not contain all of the essential terms of the original agreement and, at most, makes only minor changes in those provisions which it does deal with. But more importantly, the document cannot be read without reference to the original agreement. The repeated references to the original make it abundantly clear that it was not intended that the original agreement be extinguished. Without this essential element, i.e., the extinguishment of the old contract, there can be no nova-

tion. *Yoder v. T. F. Scholes,* 404 Pa. 242, 173 A. 2d 120 (1962); *Harty v. Standard Accident Ins. Co.,* 394 Pa. 358, 147 A. 2d 421 (1959). But Emanuel's second argument is that once the case was marked settled, discontinued and ended, the action was terminated and the lower court thereupon lost jurisdiction to enforce the agreement which was incorporated in its decree.

Appellant thus argues that by his partial compliance with the court's decree, i.e., marking the case settled and discontinued, he may thereby preclude the court from enforcing the remainder of the decree and, in effect, flout the chancellor's further directives. Both common sense and common law militate against such a result. "The power of a court of equity to enforce its own decrees is a necessary incident to the jurisdiction of the court. 'Without such power, a decree would in many cases be useless. "All courts [of equity] have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless" '. . . . *The jurisdiction of the court continues for the purpose of enforcing the decree. . . .* Where there is an unimpeachable final decree, contemplating the performance of a series of acts, the proceedings to enforce compliance with that decree must be through that proceeding. . . ." *Butler Co. v. P., H., B. and N. C. Ry. Co.,* 298 Pa. 347, 350-351, 148 A. 504, 505 (1929); *Roth v. M'Clelland,* 6 Watts 68 (1837).

Moreover, "a party seeking to enforce an agreement compromising pending litigation is not at liberty to institute in any court any action he sees fit; especially is this true as here where the agreement has been in part performed. A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise,

instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus." *Melnick v. Binenstock,* 318 Pa. 533, 536, 179 A. 77, 78 (1935).

Decree affirmed. Costs to be paid by Emanuel.