## M. S. Jacobs and Associates, Inc., Appellant, *v.* Duffley.

144

Argued March 14, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Charles D. Coll,* for appellant.

No oral argument was made nor brief submitted for appellee.

Opinion by Mr. Justice O'Brien, May 4, 1973:

Appellant, M. S. Jacobs and Associates, Inc., is a corporation engaged in sales of various products for manufacturers, with its principal sales force located in Pennsylvania, New York, Ohio, and West Virginia. Sometime in 1966, appellee, Joseph C. Duffley, became an employee of appellant pursuant to an oral contract. On March 1, 1968, the parties entered into a written employment contract which included a covenant against competition after the termination of employment.

On May 16, 1972, appellant, alleging that appellee is now engaging in competition with it, in violation of the covenant against competition, filed a complaint in equity seeking an injunction. After hearing testimony, in an opinion filed July 19, 1972, the chancellor entered a decree nisi dismissing the complaint. Appellant took exceptions and, after oral argument was waived, the court en banc entered a final decree on October 17, 1972, dismissing appellant's exceptions and complaint. This appeal followed.

The record reveals that appellee came into the employ of appellant in 1966 as an inside salesman, with his duties limited to office work. Prior to the 1968 agreement, appellee was sent out on the road to follow up complaints by appellant's customers, but he was not actually engaged in a sales capacity and was not able to earn commissions. In March of 1968, appellee was placed on the outside sales force of appellant. He was given expenses and his salary included commissions from the sales he made. It was at this time that appellee signed the employment contract containing the restrictive covenant. A year later, in June of 1969, appellee tendered his resignation, claiming that he had a better offer elsewhere. However, when appellee was offered a raise in salary, he decided to remain in the employ of appellant.

According to the chancellor, citing our opinion in *Capital Bakers, Inc. v. Townsend*, 426 Pa. 188, 231 A. 2d 292 (1967), the restrictive covenant was unenforceable because it was not ancillary to the taking of employment. The chancellor distinguishes our decision in *Jacobson & Co. v. Int. Environment Corp.*, 427 Pa. 439, 235 A. 2d 612 (1967), where we held that a beneficial change in an employee's status was sufficient consideration to support a restrictive covenant agreed to after the initial taking of employment, on the grounds that there was no such change in appellee's status in the instant case.

Furthermore, the chancellor reasoned, when appellee resigned in June of 1969, a novation of contract occurred and when he continued in the employ of appellant at a higher salary, that employment was under a new contract, which did not contain the restrictive covenant.[1]

Our review of the record indicates that it does not support the chancellor's attempt to distinguish the instant case from *Jacobson, supra.* Appellee admitted that although he was an outside man before the 1968 contract, he received no additional remuneration for his duties and was not in fact engaged in the actual selling of appellant's line of merchandise until 1968. Only

---

[1] The opinion of the chancellor is somewhat vague in regard to this novation theory. In fact, the opinion, which states the facts and law in narrative form, barely satisfies the requirements for a proper adjudication, including findings of fact and conclusions of law, as spelled out in Pennsylvania Rules of Civil Procedure 1516 and 1517. See *Thompson v. Thompson*, 451 Pa. 546, 301 A. 2d 644 (1973); *Stryjewski v. Local Union No. 830*, 451 Pa. 550, 304 A. 2d 463 (1973); *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A. 2d 491 (1968). However, we have reached a determination on the merits rather than simply remanding for a proper adjudication, as was done in those cases, because appellant was able to take exceptions to specific "findings of fact" and "conclusions of law" as is required by the rules.

after the 1968 contract did appellee become an official salesman. Only then did he receive compensation for his travel expenses and a commission on his sales. Specifically, appellee testified as follows: "A. . . . In the fall of 1967 . . . to more or less supplement our coverage, approximately two days every other week I would go out and follow up some sales inquiries or sales leads, in support of Mr. Loney. This would give us a broader sales coverage. Q. Where would you normally go out? A. Well, I would say I would go—if I were going north I would go to Brockway, St. Marys, and then maybe come back and stay at Oil City that night and then call on Oil City and come down to Indiana, Pennsylvania, then back to Pittsburgh. In other words, it wouldn't be more than two days that I would be away. Q. During this period of time would you receive any remuneration other than your salary? A. No, I did not."

From this testimony it can be seen there was a substantial beneficial change in appellee's employment status in March of 1968, when appellee assumed the position of an outside salesman, thus supplying the consideration necessary to bring this case within the law as stated in *Jacobson, supra.*

With respect to the chancellor's findings that a novation occurred in June of 1969, when appellee tendered his resignation, the record reveals that the resignation was never accepted and that appellee's pay was never stopped, thus negating the determination that appellee was in fact discharged and rehired. As we stated in *Yoder v. T. F. Scholes, Inc.,* 404 Pa. 242, 245, 173 A. 2d 120 (1961), "he who asserts a novation must properly plead and prove it. . . ." In the instant case, the record is insufficient to support the conclusion that a novation took place.

Even though the restrictive covenant is valid, there are other questions which must be resolved concerning

the reasonableness of its scope as to time and territory. The chancellor's opinion does state that he doubts that the territorial restrictions are valid and also states that the contract should not be enforced because appellant would not be harmed by nonenforcement since it no longer has contractual ties with customers with whom appellee had dealt when he was in the employ of appellant. We note, however, with regard to the latter statement, that the contract specifically provides that appellee: ". . . will not on behalf of himself or any person, partnership, corporation, or other entity, either directly or indirectly, represent, sell for, or solicit the representation of *any of the suppliers the Employer represented at the time of Employee's termination or has represented within one year of his termination for a period of two years after said Employee leaves M. S. Jacobs and Associates, Inc. . . .*" (Emphasis supplied.) Moreover, there was specific testimony by the president of appellant that much business was lost because of appellee's conduct. Since the chancellor made no clear findings of fact on any of these questions, they must be dealt with on remand.

Decree vacated and case remanded to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion. Each party to bear own costs.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice POMEROY and Mr. Justice MANDERINO concur in the result.