478 A.2d 484

**BUTTONWOOD FARMS, INC. t/a the Delta School and William A. Phillips, M.D., Appellants,**

v.

**Selma CARSON.**

Superior Court of Pennsylvania.

Argued March 21, 1984.

Filed June 29, 1984.

Petition for Allowance of Appeal Denied Jan. 7, 1985.

314

Stanley M. Shingles, Philadelphia, for appellants.

Alan B. Epstein, Philadelphia, for appellee.

Before SPAETH P.J., and BECK and TAMILIA, JJ.

TAMILIA Judge:

This is an appeal from a denial of appellants' request for injunctive relief seeking to enjoin its former employee, Selma Carson, from invoking her right to arbitrate under the arbitration provision in the parties' 1972 employment contract.

■■ At the outset, we note that our review of a decree denying a preliminary injunction is limited to a consideration of whether there were any *apparently reasonable grounds* for the action of the court below. *Hospital Association of Pennsylvania v. Commonwealth Department of Public Welfare*, 495 Pa. 255, 433 A.2d 450 (1981); *Pennsylvania Securities Commission v. Continental Manufacturing Company*, 465 Pa. 411, 350 A.2d 831 (1976); *Duggan v. 807 Liberty Avenue Inc.*, 447 Pa. 281, 288 A.2d 750 (1972); *Jostan Aluminum Products Company, Inc. v. Mount Carmel District Industrial Fund*, 256 Pa.Super. 353, 389 A.2d 1160 (1978). We will affirm the decision of the court below unless the record reveals a clear or manifest abuse of discretion or palpable legal error committed by the lower court. *Duggan v. 807 Liberty Avenue, supra; Stander v. Kelley*, 432 Pa. 1, 246 A.2d 649 (1968); *Diehl v. Lockard*, 254 Pa.Super. 111, 385 A.2d 550 (1978). Because we hold that the lower court did not err in concluding that appellant failed to meet its burden of establishing a substituted contract, we affirm.

In November, 1972, Carson contracted with appellant, Buttonwood Farms, to serve as its Executive Director and Chief Administrative Officer. The contract entered into provided Carson a minimum annual salary of $20,000, fringe benefits, retirement compensation and life insurance, and covered all terms and conditions of her employment, including a right to severence benefits. The contract detailed at paragraph five sets forth conditions of breach that would result in involuntary termination and forfeiture of compensation:

5. Forfeiture of compensation to EMPLOYEE subsequent to termination shall result solely upon the following

conditions of breach by EMPLOYEE and for no other reason or reasons:

a) Conviction of EMPLOYEE for any felony in any court of record;

b) Intentional misappropriation of EMPLOYER's funds and assets as may be determined by any final court of record;

c) Voluntary resignation from employment prior to age sixty.

The forfeiture of compensation by EMPLOYEE shall not be deemed a forfeiture of retirement funds vested in her and shall relate solely to subsequent salaries provided for hereunder.

The contract at paragraph ten also contains a provision providing for the arbitration of disputes:

10. In the event of any dispute arising out of or by reason of this Agreement, the parties agree to submit such dispute or disputes to the American Arbitration Association in Philadelphia, Pennsylvania, in accordance with the Rules of that Association and the parties agree to be firmly bound to the decision or award rendered by the arbitrators. Costs of the arbitration shall be borne by the EMPLOYER in such disputes as are based on alleged defaults of EMPLOYER otherwise, as to other disputes exclusive of allegations of an EMPLOYER's breach, the costs shall be borne equally between the parties.

Carson served without incident as Executive Director until June of 1978 when concern was expressed by appellant's Board of Directors regarding her unauthorized expenditure of monies for repairs and improvements to one of appellant's facilities. Subsequently, the Board of Directors recommended that she take a sabbatical leave for a one year period beginning July 1, 1978, or, as an alternative, accept a position as Director of Development for the 1978–79 fiscal year. This recommendation became a one-page written agreement between the parties and was entered into on August 17, 1978. The agreement, in addition to providing Carson the option of a sabbatical or a position as Director of

Development, also provided her continued compensation for the 1977–78 year and an administrative position following the sabbatical year with salary and benefits to be negotiated. The agreement made no direct reference to any of the provisions contained in the 1972 agreement nor did it expressly revoke any of its provisions. Carson chose the sabbatical option and upon her return from leave, she served for a two year period in an administrative capacity. Thereafter, Dr. Phillips, appellant's new Executive Director, informed Carson by letter in August, 1981 that her salary for the 1981–82 school year would be reduced to $12,500 and commanded her to sign a new contract or face dismissal. As a consequence of this ultimatum, Carson sought to arbitrate the dispute under the arbitration provision contained in the 1972 agreement.

Appellant contends that the lower court erred in deciding that the provision to arbitrate contained in the 1972 agreement remained operative because any duty to arbitrate was discharged by the 1978 agreement. Appellant urges that the parties entered into a substituted agreement or novation, which has the effect of extinguishing all rights and duties under the earlier agreement. See, Restatement of Contracts § 424 (1932); Restatement (Second) of Contracts § 279, § 280 (1979).

The required essentials of a novation are "the displacement and *extinction of a valid contract*, the substitution for it of a valid new contract, ..., a sufficient legal consideration for the new contract, and *the consent of the parties ....*" (emphasis supplied). *Yoder v. T.F. Scholes, Inc.*, 404 Pa. 242, 245, 173 A.2d 120, 121–122 (1961). See *First Pennsylvania Bank N.A. v. Triester*, 251 Pa.Super. 372, 380 A.2d 826 (1977); *15 Williston on Contracts*, § 1869 et seq. (1972); see also, *Advanced Management Research Inc. v. Emanuel*, 439 Pa. 385, 266 A.2d 673 (1970). The party asserting a novation or substituted contract has the burden of proving that the parties intended to discharge the earlier contract. See *M.S. Jacobs and Associates, Inc. v. Duffley*, 452 Pa. 143, 303 A.2d 921 (1973); *Jacobson and*

*Company v. International Environment Corporation,* 427 Pa. 439, 235 A.2d 612 (1967); *Yoder v. T.F. Scholes, Inc., supra; First Pennsylvania Bank N.A. v. Triester, supra; Kritz v. Axler,* 134 Pa.Super. 120, 3 A.2d 943 (1939). Such intention of the parties to effect a novation or substituted contract may be shown by other writings, or by words, or by conduct or by all three. See *Trustees of First Presbyterian Church of Pittsburgh v. Oliver-Tyrone Corporation,* 248 Pa.Super. 470, 375 A.2d 193 (1977); *Hydro-Flex Inc. v. Alter Bolt Company,* 223 Pa.Super. 228, 296 A.2d 874 (1972).

 Instantly, the record presents no clear evidence of the parties' intention to supplant the 1972 contract. The 1978 one-page document fails to provide expressly that it supersedes the original agreement between the parties. See generally *Schuster v. Gilbertson Coal Company,* 412 Pa. 353, 194 A.2d 346 (1963). Nor does it contain all the essential terms of the original agreement, particularly, the arbitration clause, the severance pay provision, and the forfeiture of compensation provision. Furthermore the 1978 agreement cannot be read without reference to the original agreement. See e.g. *Advanced Management Research Inc. v. Emanuel, supra.* The promise of a one-year sabbatical to Carson derives from her then current position under the 1972 agreement. The provision of continued compensation for the year 1977–1978 is intelligible only by reference to the original agreement. Thus, it is far from clear that the parties intended the 1978 agreement to extinguish the earlier contract. Without the extinguishment of the earlier contract, there can be no novation. See *Advanced Management Research Inc. v. Emanuel, supra.*

We further think that it would be unreasonable to conclude that Carson would assent to a substituted contract or novation and give up her right to arbitrate as provided for by the 1972 agreement. The circumstances surrounding this case make this point. Appellant's dissatisfaction with Carson's performance as Executive Director in 1978 gave it few viable alternatives; they could dismiss her involuntarily

or ask for her voluntary resignation, knowing that either course would in all likelihood prompt Carson to seek severance benefits through the arbitration mechanism provided in the original contract, or seek another course. As was evidenced by the testimony of Dr. Phillips at the hearing below, the strict pre-conditions permitting appellant to involuntarily terminate Carson with forfeiture of compensation benefits most likely could not be met. It is presumed Carson knew this as well. In these circumstances, then, it would be most unlikely that Carson would relinquish her right to arbitrate since doing so would not be in her best economic interests. See *Jacobson and Company v. International Environment Corporation, supra.* Thus, the essential element of consent to novation is also absent.

■ Finding no clear or manifest abuse of discretion nor palpable legal error committed by the lower court, we affirm the lower court order.[1]

Order affirmed.

SPAETH, P.J., filed a dissenting statement.

1. Although our colleague is correct that as a technical matter the instant case is moot inasmuch as the parties did proceed to arbitration, the issue that underlies the present dispute remains controverted. Effective resolution of the dispute and fair treatment of the parties compels us to review and address whether an agreement to arbitrate was entered into between the parties. (Appellants do not contest the fact that the dispute here would be arbitrable if an agreement to arbitrate existed.)

The instant appeal is from the lower court's order of August 6, 1982, denying appellants' request for a preliminary injunction to enjoin arbitration that was scheduled to proceed on August 17, 1982. Appellants further requested the lower court to stay the arbitration pending appeal to our Court. This request was denied by the lower court on August 11, 1982. Appellants filed a notice of appeal to our Court, and made application to our Court to enjoin the scheduled arbitration during the pendency of the instant appeal. Our Court denied this motion on August 16, 1982. Arbitration under the rules of the American Arbitration Association proceeded as scheduled, and an award was rendered on August 23, 1982 in favor of appellee. Appellant thereafter filed a petition in the lower court seeking to vacate the arbitrator's award, and appellee filed a petition in the lower court seeking to confirm the award and to enter judgment. The lower court, *sua sponte,* questioned its jurisdiction to act upon these peti-

SPAETH, President Judge, dissenting:

Rather than affirm the trial court's order, I should dismiss the appeal. I think that the issue of whether the trial court erred in denying a preliminary injunction is moot. The record discloses that the arbitration was scheduled for August 17, 1982, and both parties agree that it has been held.

Moreover, I am unable to agree with the majority's determination that appellants will be unable to secure review of this issue unless it is considered on this appeal. It is for the court to determine whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision. *See Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa.

tions because of the instant appeal, and accordingly stayed further consideration of them pending our disposition.

We think appellants are entitled to judicial review of the issue raised herein. Through no procedural error on their part, appellants' efforts to stay the scheduled arbitration in order to put before an appellate tribunal the issue presented herein, were rendered futile by the lower court and this Court. See generally, *Lincoln University of the Commonwealth System of Higher Education v. Lincoln University Chapter of American Assoc. of University Professors*, 467 Pa. 112, 354 A.2d 576 (1976) (when one party seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to whether an agreement to arbitrate was entered into and whether the dispute involved falls within the arbitration clause). In this respect, quashing the instant appeal would, *in effect*, treat appellants as though they had not sought to enjoin the arbitration but had merely proceeded to arbitration without requesting the court to determine whether an agreement to arbitrate existed. Since the arbitration here was a non-judicial arbitration, see *Great American Insurance Company v. American Arbitration Association*, 436 Pa. 370, 260 A.2d 769 (1970) and because appellate review of such non-judicial arbitration is quite narrow, appellants would be denied judicial inquiry into whether an agreement to arbitrate existed. *See* 42 Pa.C.S.A. § 7341; *Brennan v. Gen. Accident, Fire and Life Assurance Corporation, Ltd.*, 307 Pa.Super. 288, 453 A.2d 356 (1982) (party who proceeds to common law arbitration without first asking a court to find the matter at issue is not arbitrable cannot later seek to have award vacated on grounds that the dispute was not within the scope of the arbitration agreement). This, we think, is not warranted under the circumstances presented here. Confronted with a narrow scope of court review, appellants would be given no satisfactory answer to the critical issue presented here. The effective resolution of the present dispute necessitates hearing the appeal.

660, 331 A.2d 184 (1975). And this issue may be raised in a petition to vacate an arbitration award. *See Hassler v. Columbia Gas Transmission Corp.*, 318 Pa.Super. 302, 464 A.2d 1354 (1983). Dismissal of this appeal therefore would not preclude consideration of the issue upon its being properly raised in a petition to vacate the arbitration award.