J-A25034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| J.C. PENNEY CORPORATION, INC., A DELAWARE CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 238 WDA 2022 |
| GFM 23, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY, WILLIAM G. MCCONNELL, IN HIS CAPACITY AS TRUSTEE OF THE WILLIAM G. MCCONNELL FUNDED REVOCABLE TRUST AGREEMENT, DATED FEBRUARY 1, 2000, EUGENIA F. MCCONNELL, IN HER CAPACITY AS TRUSTEE OF THE EUGENIA F. MCCONNELL FUNDED REVOCABLE TRUST AGREEMENT, DATED FEBRUARY 1, 2000, G. THOMAS MCCONNELL AND CHARLENE S. MCCONNELL, HIS WIFE, MARY ELEANOR MILHEIM AND IRVINE G. MILHEIM, HER HUSBAND, MARTHA M. BEEZER AND GENE BEEZER, HER HUSBAND, WILLIAM G. MCCONNELL, JR., AND JENNIFER S. MCCONNELL, HIS WIFE, ANNE M. SHANNON AND MICHAEL R. SHANNON, HER HUSBAND, JOHN C. MCCONNELL AND SHANNON K. MCCONNELL, HIS WIFE, CATHERINE M. METTENBURG AND JOSEPH M. METTENBURG, HER HUSBAND, TERRENCE C. MCCONNELL, CYNTHIA M. ANDREYKO AND GREGORY M. ANDREYKO, HER HUSBAND, CATHLEEN L. HERBERGER AND TIMOTHY F. HERBERGER, HER HUSBAND, MATTHEW B. MCCONNELL AND ANGELA M. MCCONNELL, HIS | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

WIFE, MATTHEW B. MCCONNELL, IN   :
HIS CAPACITY AS TRUSTEE OF THE   :
MCCONNELL FARMS REVOCABLE   :
TRUST, DATED DECEMBER 11, 2017,   :
STEPHEN G. MILHEIM, IN HIS   :
CAPACITY AS TRUSTEE OF THE   :
STEPHEN G. MILHEIM REVOCABLE   :
TRUST, DATED JULY 11, 2013,   :
WILLIAM G. MILHEIM AND   :
JACQUELINE B. MILHEIM, HIS WIFE,   :
ANNA MARIE MILHEIM, GEORGE H.   :
MILHEIM, MARY MICHELE MILHEIM,   :
HANNAH LEE MILHEIM, REBECCA B.   :
SMITH, AND WILLIAM D. SMITH,   :
HER HUSBAND, DAVID G. BEEZER   :
AND SHANNON BEEZER, HIS WIFE,   :
JOHANNA ELEANOR GIBSON AND   :
JOHN RYAN GIBSON, HER HUSBAND

Appeal From the Order Entered January 28, 2022
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2019-3655

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

DISSENTING MEMORANDUM BY KUNSELMAN, J.:   **FILED: JUNE 23, 2023**

I agree with the majority's conclusion that the plain meaning of the phrase, "any extension thereof," is not limited to the extensions specifically set forth in the 1966 Penney Sublease and that this phrase encompassed the extensions set forth in the 2003 Penney Sublease.  However, I write separately as I do not agree with the majority's conclusion that, because the 2003 Penney Sublease changed various, even material, terms of the 1966 Penney Sublease, Owner is not bound to assume Crown's responsibilities or to recognize Penney's sublease rights under Paragraph 4a of the Owner's Agreement. Majority Opinion, at 17.  As such, I would reverse the trial court's order and

- 2 -

enter judgment in favor of Penney declaring that there is a contractual relationship between Penney and Owner under the 2003 Penney Sublease, which Owner is required to honor, and Penney continues to have possession of the premises under the terms of 2003 Penney Sublease.  For the reasons set forth below, I respectfully dissent.

The provision in the Owner Agreement at issue states:

4. If Penney shall perform the obligations under the Penney Lease [(1966 Penney Sublease)] on its part to be performed, Ground Lessor [(Owner)] further covenants and agrees that:

a. ***Penney shall have and enjoy during the term of the Penney Lease and any extension thereof,*** the quiet and undisturbed possession of the premises so demised to Penney with the appurtenances thereto, and Penney's possession and rights under the Penney Lease shall not be adversely affected in any way by reason of default by the Ground Lessee under the ground lease in performing any of the Ground Lessee's obligations thereunder, or by reason of the termination or cancellation of the ground lease, or by reason of any action taken by Ground Lessor with respect to any default of the Ground Lessee under the ground lease.

Exhibit 2, Penney's Complaint (emphasis added).  Based upon this language, the majority concludes that Owner was to assume Crown's responsibilities under the 1966 Penney Sublease only if there was a modification of the duration of the 1966 Penney Sublease with the same terms, *i.e.*, "Penney would simply extend all of the very same terms for an additional period of time." ***Id.***  Because the 2003 Penney Sublease did not provide that the parties only would continue to observe the same terms but modified some material

- 3 -

terms of the 1966 Penney Sublease, it was not an "extension" as contemplated by Paragraph 4a. I disagree.

First, I believe the majority misinterprets the use of the word "extension" in the Owner's Agreement as it relates to the 1966 Penney Sublease. Instead, considering the language in its entirety and the grammatical structure of the phrase, "Penney shall have and enjoy ***during the term of the Penney Lease and any extension thereof,"*** I interpret the word "extension" to correlate with the word "term." This interpretation is consistent with the drafter's intent in using that phrase to establish the time period during which Owner's obligations would apply. Indeed, the majority finds that this language addresses the duration of the lease. In fact, the majority concludes that the 2003 Penney Sublease extended the term of the 1966 Penney Sublease and that those additional terms were encompassed by this language. Majority Opinion, at 14.

But the majority then switches gears and concludes that the term "extension" dictates the form of agreement that the 2003 Penney Sublease must take to determine whether Owner is liable thereunder. This is counter intuitive. The form of agreement is not relevant to the length of the lease.

The majority's conclusion also ignores the provisions of other documents related to this transaction. "Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been

executed at different times and do not in terms refer to each other." ***Neville v. Scott***, 127 A.2d 755, 757 (Pa. Super. 1957).

Notably, the 1966 Ground Lease between Owner and Crown for the initial development and construction of the mall provided in relevant part:

> Article 13. Assignment and Subletting.
>
> [Crown] shall have the right at all times, **without Lessor's consent**, to assign this Lease or **sublet** the Demised Premises or any part thereof . . . .

Exhibit A, Owner's Answer (emphasis added). This provision demonstrates that, from the outset, Owner gave Crown complete freedom to sublease the property without the Owner's consent at any time.

The 1966 Penney Sublease between Crown and Penney then provided in relevant part:

> No modification of this lease shall be binding unless evidenced by an agreement in writing signed by Landlord [Crown] and signed in Tenant's name by one of Tenant's duly authorized officers.

Exhibit 1, Penney's Complaint. This language gave Crown unlimited authority to modify the 1966 Penney Sublease. It was contemplated that the Owner would not be involved in any sublease of the property. This language also did not limit the type of modifications that could be made to the 1966 Penney Sublease, including any limits on the creation of the Sublease. Notably, this was consistent with the Ground Lease.

Furthermore, to induce Penney to execute the 1966 Penney Sublease, Owner entered into a separate Owner's Agreement with Penney and Crown.

Importantly, that document provided that "[Owner] hereby consents to and approves of the Penney Lease." Exhibit 2, Penney's Complaint. Thus, Owner acknowledged and consented to the provisions of the 1966 Penney Sublease and was aware that unlimited modifications could be made to the 1966 Penney Sublease. The Owner Agreement did not impose a new requirement that the Owner be advised of or approve any changes to the 1966 Penney Sublease or seek to limit the type of modifications that could be made without its consent. Instead, Owner again freely allowed and accepted that Crown could contract with its sublessors as needed, in any manner, and in particular with Penney.[1]

Thus, to conclude that the Owner Agreement obligations only applied if the 1966 Penney Sublease had the same provisions, except the duration, is untenable. The majority's conclusion fails to give effect to these other documents. By adopting the trial court's rationale, the majority interjects limiting terms in these agreements which are not present. My interpretation recognizes that Crown was free to extend the term of the 1966 Penney Sublease and/or modify its other provisions without consent of the Owner, which upholds important principles of contract law (*i.e.*, giving terms their ordinary meaning and construing multiple agreements together) and interprets the language of Owner's Agreement in conjunction with the other relevant documents.

---

[1] In fact, prior to the 2003 Penney Sublease, the 1966 Penney Sublease had been modified multiple times without issue.

- 6 -

Lastly, the majority cites no authority for its conclusion that the 2003 Penney Sublease constitutes a new agreement. In doing so, the majority fails to apply existing law regarding what constitutes a substituted contract or novation, and instead heedlessly adopts the trial court's rationale of what constitutes a new agreement.

A substituted contract, or a novation, is a method to extinguish one obligation by establishing another. *Nowicki Const. Co., Inc. v. Panar*, 492 A.2d 36 (Pa. Super. 1985). A novation is distinguishable from a mere modification of a contract, which involves the alteration of some details of the contract, while leaving undisturbed its original purpose." Summary of Pennsylvania Jurisprudence 2d § 5:13 (citing *Peoples Nat. Bank of Ellwood City v. Weingartner*, 33 A.2d 469 (Pa. Super. 1943); *Lamb v. Allegheny County Inst. Dist.*, 69 A.2d 117 (Pa. Super. 1949).

To establish that a novation occurred, "the party asserting a novation must show that: (i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new." *First Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 138 (Pa. Super. 1997) (citing *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486 (Pa. Super. 1984)). "[W]hether a contract has the effect of a novation primarily depends upon the parties' intent." *Id.* (citation omitted); *Citizens Bank Nat'l Ass'n v. Acuite Consulting Sols., LLC.*, 256 A.3d 42 (Pa. Super. 2021).

Here, contrary to the majority and trial court's conclusion, Owner failed to establish that a novation occurred. Instead, as Penney argues, the 2003 Penney Sublease was merely an amendment to an existing lease and not a new lease obligation or new lease agreement.

Notably, the 2003 Penney Sublease provided that, in addition to extending the terms of the 1966 Penney Sublease, Crown and Penney desired to "***modify*** the same ***in certain*** other respects." It further provided:

> Except as hereby ***modified*** and ***amended***, the parties hereto do hereby ***ratify and confirm*** the terms, covenants, provisions and conditions of the [1966 Penney Sublease] and this Agreement [(2003 Penney Sublease)]. The [1966 Penney Sublease] is hereby incorporated by reference into this Agreement made a part hereof as if fully repeated herein, ***except*** as otherwise specifically provided pursuant to this Agreement.

Exhibit 3, Section 17, Penney's Complaint (emphasis added). This language shows that Penney and Crown clearly intended for the 2003 Penney Sublease to merely amend and modify the existing 1966 Penney Sublease, not to completely replace it. To constitute a novation, or new agreement as termed by the majority, there must be more than just a modification of the terms. In particular, the parties of the existing agreement must agree to the "displacement and extinction of a valid contract" and "the substitution for it of a valid new contract." Here, there is no evidence that the parties had a "meeting of the minds" to enter into a new contract and discharge the original contract.

Furthermore, where an agreement states "except as modified this agreement shall remain in full force and effect," we have held that no novation occurs. **Melat v. Melat**, 602 A.2d 380 (Pa. Super. 1992). The relevant language in the 2003 Penney Sublease clearly contemplated that the existing 1966 Penney Sublease would remain in full force and effect, except otherwise modified in the 2003 Penney Sublease.

Given the clear intentions of Penney and Crown, I believe the trial court erred in concluding that the 2003 Penney Sublease constituted a new agreement.

Additionally, the actions of the parties ratified the acceptance of the extension. Penney and Crown acted in compliance with the 2003 Penney Sublease for years. Owner never questioned the terms of this agreement or Crown's ability to negotiate it. Owner accepted payment of rent from Crown until the Ground Lease was terminated and accepted payment directly from Penney. Owner should not now, years later, be able to claim it is not bound by the modified agreement entered by Crown and Penney.

Accordingly, I would reverse the order entered in favor of Owner and against Penney, and uphold the parties' extended contract.