**FIRST LEHIGH BANK,**
**Appellant (at 284),**

v.

**HAVILAND GRILLE, INC., Peter**
**J. Karoly and Nathan Selden.**

Peter J. **KAROLY**, Lauren B. Angstadt, Nathan A. Selden, Kristin G. Selden, and The New Haviland, Inc., T/A The New Haviland Grille,

v.

**James LEUTHE, Individually**
**and First Lehigh Bank.**

**Appeal of FIRST LEHIGH**
**BANK (at 414).**

Superior Court of Pennsylvania.

Argued June 18, 1997.
Filed Nov. 21, 1997.

---

Kevin T. Fogerty, Allentown, for appellants.

Richard P. Abraham, Philadelphia, for appellees.

Before CAVANAUGH, EAKIN and MONTEMURO,* JJ.

EAKIN, Judge.

First Lehigh Bank appeals from the order of the Court of Common Pleas of Lehigh County, denying its post-verdict motions.[1] We are constrained to remand.

This appeal derives from the sale of a restaurant business formerly called the Haviland Inn, located on Tilghman Street in Allentown. On August 2, 1989, appellant entered an agreement with Peter J. Karoly and Nathan A. Selden (the "Karoly group"), to convey the Inn's real estate, business equipment, inventory, and liquor license for a price of $225,000. Appellant had acquired the restaurant as a result of mortgage foreclosure proceedings against its owners, Gregory and Dorothy Newhard.

At settlement, appellant informed the Karoly group it did not own the restaurant's liquor license, nor could it convey the license without the express consent of the Newhards. Nevertheless, appellant's representatives insisted the Newhards would cooperate in transferring the license and that the delay was merely a technicality. The Karoly group agreed to close, but $25,000 of the purchase price was placed in escrow pending transfer of the license. Appellant subsequently failed to transfer the license and the escrowed money was returned to the Karoly group.

The Karoly group tried to purchase another license, but discovered the Liquor Code prevented any other liquor license from being used at that location because of its proximity to a church and school. As such, the Karoly group engaged in direct negotiations with the Newhards, and opened their restaurant in July, 1990, without a liquor license.

In October of 1990, appellant agreed to finance the Karoly group's purchase of the Newhard's license, in return for their commitment to execute a demand note upon successful transfer of the license. That agreement, embodied in a Letter of Intent, dated October 16, 1990, provided appellant would loan $17,500, pay $2,500 against the purchase price of the license, and discharge outstanding tax liens and accounting fees. Although appellant advanced $15,353.25 pursuant to that agreement, the Karoly group refused to execute a demand note or to repay the loan. The Karoly group subsequently acquired the license directly from the Newhards, and began selling alcoholic beverages on February 1, 1991.

On June 20, 1991, appellant instituted a breach of contract and fraud action against the Karoly group to recover the funds loaned under the Letter of Intent. The Karoly group commenced a similar action October 4, 1991, claiming lost profits attributed to the lack of a liquor license; they alleged appellant fraudulently induced the sale of the restaurant by misrepresenting the Newhards' cooperation, and breached the Agreement when it failed to convey the liquor license. The matters were consolidated for trial.

On January 18, 1995, a jury returned a verdict in favor of the Karoly group, awarding lost profits of $115,400. The jury also awarded appellant $15,353.25 on its breach of

---

* Retired Justice assigned to Superior Court.

1. This appeal stems from a consolidated action. Appellant appeals the order denying post-verdict motions in *Peter J. Karoly, et al. v. First Lehigh Bank,* No. 00414 Philadelphia 1997; neither party challenged the verdict in *First Lehigh Bank v. Haviland Grille, Inc., et al.,* No. 00284 Philadelphia 1997.

contract claim. Appellant's post-verdict motions were denied on December 8, 1996, and this timely appeal followed.

■ Appellant raises several allegations of error in connection with the jury's finding of fraud. However, because the jury awarded identical damages for fraud as it did for breach of contract, we need not determine whether the evidence is sufficient to support the finding of both. Thus, we limit our review to the following:[2]

I. Whether the evidence is sufficient to support the jury's finding that the Letter of Intent did not supersede the sales Agreement?

II. Whether the trial court properly declined to impose sanctions notwithstanding the Karoly group's willful failure to comply with discovery?

III. Whether the trial court's denial of a continuance was manifestly unreasonable in light of the Karoly group's eleventh-hour disclosure of properly discoverable and previously requested documents?

When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the verdict winner, in whose favor we resolve any conflict in the evidence and give the benefit of every reasonable inference of fact. *Shaw v. Kirschbaum*, 439 Pa.Super. 24, 28, 653 A.2d 12, 14 (1994), *alloc. denied*, 541 Pa. 652, 664 A.2d 542 (1995). Our primary function is to determine whether there exists sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.*, 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). "Judgment notwithstanding the verdict may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the

verdict was improper." *Pirozzi v. Penske Olds–Cadillac–GMC*, 413 Pa.Super. 308, 312, 605 A.2d 373, 375, *alloc. denied*, 532 Pa. 665, 616 A.2d 985 (1992).

When reviewing the denial of a motion for new trial, we examine the record to determine whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 425, 521 A.2d 413, 420 (1987). A new trial should be granted only where the evidence is so contrary to the evidence as to shock one's sense of justice. *Doe v. Raezer*, 444 Pa.Super. 334, 341, 664 A.2d 102, 109 (1995), *alloc. denied*, 544 Pa. 630, 675 A.2d 1248 (1996).

■ Appellant first contends the trial court erred in determining the October 16, 1990 Letter of Intent did not rescind and replace the Agreement. The doctrine of novation, or substituted contract, applies where: (i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new. *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 317, 478 A.2d 484, 486 (1984). A novation is accepted by the parties as "satisfaction of a pre-existing duty, [which] thus bars the revival of the pre-existing duty following a breach of the substituted contract." *Nernberg & Laffey v. Patterson*, 411 Pa.Super. 417, 422, 601 A.2d 1237, 1239 (1991)(quoting *Hydro–Flex, Inc. v. Alter Bolt Co.*, 223 Pa.Super. 228, 234, 296 A.2d 874, 878 (1972)). However, whether a contract has the effect of a novation primarily depends upon the parties' intent. *Id.* The party asserting its existence bears the bur-

---

**2.** Appellant's "Questions Involved" is in derogation Pa.R.A.P 2116(a), which provides in pertinent part:

The statement of the questions involved must state the question or questions *in the briefest and most general terms, without names, dates, amounts or particulars of any kind.* It should not ordinarily exceed 15 lines, *must never exceed one page* This rule is to be considered in the highest degree mandatory, admitting of no exception[.]

Pa.R.A.P., Rule 2116(a).

Appellant's "Questions" abound with detail, amount to 57 lines of type, and consume nearly two full pages of its brief. They are incapable of being answered simply, if at all. Failure to conform with the requirements of rules of court is grounds for dismissal. *See* Pa.R.A.P. 2101. While we decline to impose that sanction here, such indifference is worthy of admonishment.

den of demonstrating the parties had a "meeting of the minds." *Id.,* at 423, 601 A.2d at 1240 (citation omitted).

■ In the instant case, the evidence does not clearly demonstrate the parties intended the Letter to supersede the Agreement. The Agreement obligated appellant to transfer the Inn's real estate, business equipment, inventory, and liquor license; the Letter solely concerns post-settlement transfer of the liquor license. While the latter could be interpreted as inconsistent with the former, in that the Letter no longer required appellant to *transfer* a license, but merely finance its transfer, the jury found them compatible. The evidence supports that finding:

> [APPELLANT'S COUNSEL] In any event, you viewed this letter that you prepared and sent back to [appellant] as a way to resolve the getting the liquor license issue, is that right?
>
> [Mr. KAROLY] No. That may have been the way someone else viewed this. *This was a way in which [appellant] was going to advance monies to effectuate the transfer of the liquor license* from the Newhards to our restaurant."

N.T., 1/3/95, at 272 (emphasis supplied).

Moreover, the language of the Letter does not expressly revoke any provision of the Agreement, nor even acknowledge that it existed. Though appellant competently and strenuously presented its case, the jury rejected this interpretation. *Randt v. Abex Corp.,* 448 Pa.Super. 224, 234, 671 A.2d 228, 233 (1996)(a jury is permitted to believe all, part, or none of the evidence presented). We find no error.

■ Appellant next argues the trial court improperly declined to impose sanctions against the Karoly group for failure to comply with the rules of discovery. Discovery sanctions are appropriate where a party "fails to make discovery or to obey an order of court respecting discovery." Pa.R.Civ.P. 4019(a)(1)(viii). The decision to sanction a

party is a matter vested in the sound discretion of the trial court. *See Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 454 Pa.Super. 512, 520, 686 A.2d 1, 4 (1996). Where sanctions have been denied, we review the evidence to determine whether the court abused its discretion. *Id.*

■ Appellant propounded interrogatories on May 27, 1994, which requested, *inter alia,* any and all expert witness reports. On December 30, 1994, seven months later and just before trial was scheduled to commence, the Karoly group furnished appellant with an expert report from their accountant, Robert Miller.

As Mr. Miller was the Karoly group's sole witness on lost profits, precluding his testimony would have been severe. In declining to restrain Mr. Miller from testifying, the trial court relied upon *Griffin v. Tedesco,* 355 Pa.Super. 475, 513 A.2d 1020 (1986). There, we opined that imposition of severe sanctions should generally be reserved for cases where a court has previously compelled discovery and a party has violated that order; an order compelling discovery "would serve as a warning that if there is future non-compliance, sanctions will be imposed." *See Id.,* at 482, 513 A.2d at 1023. Here, there was no order compelling discovery [3] and hence, no violation thereof. Accordingly, while we do not condone concealment of properly discoverable and relevant documents, we find no abuse of discretion in denying sanctions.

■ Appellant lastly contends the court's denial of its motion for a continuance was manifestly unreasonable in light of the Karoly group's eleventh-hour disclosure of documents vital to its claim for lost profits. We are constrained to agree.

The grant or denial of a continuance is a matter within the sound discretion of the trial court, which will not be overturned unless the court abused its discretion or committed an error of law. *TCI Const. Corp. v. Gangitano,* 403 Pa.Super. 621, 628, 589 A.2d

---

**3.** This is not to suggest an order is a necessary prerequisite to imposition of sanctions. Clearly Pa.R.Civ.P. 4019(a)(1) (viii) provides sanctions may be appropriate if a party "fails to make discovery *or* to obey an order of court respecting discovery". The learned trial court could have imposed sanctions without an order; however, as exclusion of the testimony would be an extremely harsh sanction, we find no error in the decision not to impose it.

1135, 1139 (1991). An abuse of discretion is not a mere error in judgment, but, rather, a misapplication of law, manifest unreasonableness, or the result of bias, ill-will, partiality or prejudice. *Id.*

In the instant case, appellant received a "stack" of financial records on Wednesday, December 22, and an expert report, faxed to appellant at three o'clock in the afternoon on Friday, December 30, 1994. Trial was scheduled to commence on January 3, 1995, the very next business day. Appellant clearly did not have a fair opportunity to examine and understand the stack of financial records or meaningfully prepare a rebuttal. Appellant had no chance to obtain its own expert, save bumping into one at a New Year's party. This action took more than three years to proceed to trial; a few days preparation during the holidays is wholly inadequate to deal with the last-minute production of substantial evidence which comprised the whole of the proofs on the question of damages.

Nevertheless, the court determined that in lieu of delaying trial for six months due to docket congestion, the trial schedule provided sufficient blocks of time during which appellant could properly prepare:

But when we look at the calendar for this case, there are, as I have pointed out to counsel, a number of days in the next week where the trial is going to be somewhat truncated. Friday, [January 6, 1995,] for instance, we will probably at best only have a half a day to devote to this trial because of eight motions that have been scheduled for Friday morning.

But then I'm going to give [appellant] the rest of today and all day tomorrow to deal with absorbing the discovery material, getting an expert, and, indeed, by the time [appellant's] case is over and [its] experts have testified and the [Karoly group's] expert are to be called is going to be in the next week anyway.

So, in effect, [appellant] is going to have several days, if not a week, to come up with an expert to respond to the experts of the [Karoly group]. And the worse case scenario is that [appellant is only] going to have all day tomorrow to do it.

N.T., 1/3/95, at 43–44.

We must disagree. Appellant was presented with an expert report and approximately 185 pages of financial records virtually on the eve of trial. Those documents were at the very core of the Karoly group's claim. The verdict awarded lost profits, attributable solely to the absence of a liquor license for the first seven months of business, in an amount exceeding half the purchase price of the entire business and real estate. At this rate, the Karoly group lost the entire price of the license about every six weeks, and could have paid for everything in less than a year based on the difference in profits from the presence of the liquor license alone. Surely appellant should have been allowed adequate time to employ an expert to assess figures establishing such remarkable profitability. If it took appellee's own accountant seven months to compile the report, giving appellant less than seven days to deal with it was manifestly unreasonable.

Just as excluding the testimony of Mr. Miller would have been too severe, failing to give appellant a fair chance to deal with the surprise report and underlying financial documents was just as severe. As it was appellee's lack of diligence which created the problem, it should not be appellant who suffers severe consequences from the solution.

Thus, we are constrained to find the interest of obtaining a just resolution was improperly sacrificed in favor of the need to expedite litigation. While the distinguished trial court was equally ambushed by this tardy disclosure, to hold otherwise would allow appellee to benefit by snubbing rules of discovery designed to prevent "trial by surprise."

After a careful review of the record, we are constrained to reverse and remand for a new trial on the issue of damages alone. Liability has been clearly established and therefore, all remaining portions of the order are affirmed.

Order reversed and remanded in part, affirmed in part. Jurisdiction relinquished.