J-A06032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF RICHARD A. MARTIN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MARY JANE GATTY | : : : : : : : | |
| | : | No. 963 WDA 2023 |

Appeal from the Order Entered July 26, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-22-07957

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.:                **FILED: May 21, 2024**

Mary Jane Gatty ("Gatty")[1] appeals from the order entered by the Allegheny County Court of Common Pleas ("orphans' court"), which found that Gatty retained no right of ownership in real estate located at 1819 Greensburg Road, New Kensington, Pennsylvania (the "Property") upon the death of her former husband, Richard A. Martin ("Decedent").  Gatty asserts the orphans' court abused its discretion in failing to find that Gatty and Decedent owned the Property as tenants in common. As the orphans' court correctly determined that the marital settlement agreement (the "Agreement") entered into by Gatty and Decedent following the dissolution of their marriage precludes such a finding, we affirm.

---

[1]  Gatty was formerly known as Mary Jane Martin.

Gatty and Decedent were married on June 25, 1976. They purchased the Property on October 31, 1991; both of their names were recorded on the deed and the mortgage. Gatty and Decedent divorced by decree on June 29, 2000. As part of the divorce action, they entered into the Agreement on June 2, 2000, which provided, in pertinent part:

> 4. [Decedent] relinquishes his inchoate intestate rights in and to the estate of [Gatty], and [Gatty] on her part relinquishes her inchoate intestate rights in and to the estate of [Decedent] and each relinquishes his or her right of election against the other's Will[.]
>
> * * *
>
> 6. [Decedent] and [Gatty] do own the [Property]. Each party agrees that [Decedent] shall reside in the [Property] until it is transferred to [Decedent] pursuant to [the Agreement], with closing to occur as soon as practical after the execution of the [Agreement. Decedent] shall take [the Property] subject to any and all debts secured by mortgage, lien or other bona fide legal encumbrances upon said [Property] at the time of closing.
>
> It is further agreed, however, that [Decedent] shall refinance and/or sell the [Property] within one year following the execution of [the Agreement] so as to remove [Gatty] from any further financial obligations and/or risk with respect to [the Property], failing which, [Gatty] shall have the right to petition a court of competent jurisdiction to enforce [the Agreement] and either compel [Decedent] to refinance or sell the [Property].
>
> It is further agreed that, in the interim, [Decedent] shall indemnify and otherwise hold [Gatty] harmless from and after the date of closing for any and all claims arising out of [Decedent's] continued ownership of [the Property], including, but not limited to any and all debts secured by mortgage, lien or other bona fide legal encumbrances, or such other items, including, but not limited to, property taxes, water and/or sewage liens, liens for public improvements or other judgments.

It is further agreed that any remaining equity shall belong to [Decedent] in consideration of the mutual covenants and agreements contained in [the Agreement]. The parties hereby agree and covenant that, both prior to and subsequent to closing, they shall execute any and all documents necessary to expedite and complete said transfer of the [Property].

In the interim, the parties agree that all carrying costs of the [Property] are to be borne by [Decedent] as the party in residence, including, but not limited to, routine maintenance and repairs which shall include the servicing of home equity loans, mortgage(s), taxes, insurance and utilities, as well as any major repairs.

In the event of a default in payment by the resident party[, Decedent,] of any or all of the foregoing items, or in the event [Gatty] shall become indebted for any reason whatsoever for and account of [the Property] for which amount [Decedent] has otherwise agreed to indemnify or otherwise hold [Gatty] harmless, then [Gatty] or the non-resident party shall have the right, but not obligation, to cure any such default and shall be entitled to immediate reimbursement therefore from the resident party, [Decedent,] including the right to enforcement under the terms of [the Agreement], or otherwise as a matter of law, either of which shall include the right to contempt sanctions, injunctive relief for the sale of the [Property] and/or such other remedial and/or enforcement action, including by way of a money judgment or execution thereon.

\* \* \*

19. The modification or waiver of any of the provisions of [the Agreement] shall be effective only if made in writing and executed with the same formality as [the Agreement.]

Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. C

(Agreement, 6/2/2000, ¶¶ 4, 6, 19).

Decedent did not transfer, refinance, or sell the Property within the one-year timeframe set forth in the Agreement, nor did Gatty seek to compel Decedent to do so. In 2004, Decedent refinanced the Property. As a result,

the Property's original mortgage was satisfied and Decedent obtained a new mortgage on the Property from National City Bank (the "National City Bank Mortgage"). The National City Bank Mortgage was executed on February 23, 2004 between Gatty and Decedent, as owners, and National City Bank, as lender. *Id.* at Ex. E. Notably, only Decedent—and not Gatty—was listed on the note as a borrower indebted to National City Bank. *Id.*

Decedent continued to reside in the Property until his death on November 25, 2022. His will named his brother, Michael E. Martin ("Brother"), as executor. Of relevance to this matter, Article IV of the will provides:

> In the event that at the time of my death I am the owner or co-owner of any real estate, insurance settlement, bank account, government bond or security or instrument of indebtedness (whether issued by a private corporation, a governmental agency or individual), which is registered or issued in my name and another person or persons as joint tenants with right of survivorship or which is registered or issued in my name but is payable to, or apparently payable to, a named beneficiary on my death, I declare it to be my intention that all my right, title and interest in such property shall immediately pass to such joint owner, co-owner and surviving beneficiary.

*Id.* at Ex. A. The will named Brother as beneficiary of all of Decedent's tangible personal property and the remainder of the estate, except for jointly owned property. *Id.*

Letters testamentary were granted to the executor on December 13, 2022. On December 26, 2022, counsel for the executor sent Gatty a letter requesting that she sign a deed in which she and the executor transferred ownership of the Property to Brother. The proposed deed provided that

- 4 -

Brother would be obligated to pay all debts secured by mortgage, lien, or encumbrances on the Property, and that the transfer was being made pursuant to terms of the Agreement. In addition, the letter to Gatty indicated that the executor, as well as Brother individually, would indemnify and hold Gatty harmless with respect to all mortgages, liens, or encumbrances on the Property.

In response, Gatty filed a Petition to Determine Ownership of the Property. Gatty averred that as of the date of Decedent's death, she continued to have legal rights, title, and interest in the Property because Decedent never transferred its deed under the Agreement, and that she was entitled to the Property as co-owner under Article IV of the will. Gatty requested a jury trial to determine the issue of ownership.

The orphans' court held a hearing on April 27, 2023, at which counsel for Decedent's estate argued that Decedent was the sole owner of the Property under the terms of the Agreement. Because the parties and orphans' court agreed that the matter presented a legal issue, Gatty withdrew her request for a jury trial. The orphans' court took the matter under advisement and the parties complied with the court's directive to file briefs. Further, the parties agreed not to list the Property for sale pending the court's ruling. On July 26, 2023, the orphans' court entered an order finding that Gatty retained no right of ownership to the Property pursuant to the Agreement. The orphans' court

also directed Gatty to execute the necessary documents to expedite the sale or transfer of the Property.

Gatty filed a motion for reconsideration. On August 21, 2023, the orphans' court heard argument on the motion and denied it on August 23, 2023. This appeal followed.

Gatty raises the following issues for our review:

The orphans' court erred, abused its discretion and/or misapplied the law in finding that [Gatty] retained no right of ownership of and in the [Property] for the following reasons:

    a.    when the evidence clearly supports that at the time of death, the real estate was owned by [] Decedent and [Gatty] as tenants in common;

    b.    where the facts are undisputed that [] Decedent did not refinance and/or sell the real estate within one year of the parties' [Agreement] so as to remove [Gatty] from the title to the [Property], but instead, satisfied the mortgage and refinanced through another mortgage with both [] Decedent and [Gatty] as owners;

    c.    where the facts are undisputed that at the time of refinancing, [Gatty] was not removed from the title to the [Property] pursuant to the parties' [Agreement];

    d.    where at the time of the refinancing, without changing the title to the [Property], the new mortgage amounted to, and was clear evidence of a modification and/or novation of the parties' [Agreement] as permitted by the [Agreement]; and

    e.    where the [will] of [] Decedent clearly states that any real estate that [] Decedent owned as a co-owner at the time of his death shall pass to the other co-owner, in this case, [Gatty].

Gatty's Brief at 5-6 (unnecessary capitalization omitted). While Gatty divides her statement of questions into five distinct subparts, she presents a single question for our consideration: did the orphans' court err when it determined that the Agreement terminated Gatty's ownership interest in the Property.

We review the orphans' court order mindful of the following:

> When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the [factfinder], it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Byerley*, 284 A.3d 1225, 1241 (Pa. Super. 2022) (citation omitted).

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Rosiecki v. Rosiecki*, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

- 7 -

Gatty argues that she and Decedent both remained owners of the Property at the time of Decedent's death because (1) Decedent failed to transfer, refinance, or sell the Property under the Agreement so as to remove Gatty from any financial obligations or risk relating thereto, (2) Decedent failed to remove Gatty as owner when the Property was refinanced in 2004, and (3) the National City Bank Mortgage modified the Agreement. Gatty's Brief at 8, 16-27. According to Gatty, when the Property was refinanced in 2004, it was "clear and unequivocal evidence" of Decedent's intent to void paragraph six of the Agreement and the new mortgage amounted to a modification, which was permitted under paragraph nineteen of the Agreement, or constituted a novation. *Id.* at 12, 18-19, 21-22. Gatty argues that Decedent's failure to have a new deed prepared at the time of refinancing is evidence of his intent to modify the Agreement and further, that Decedent would not have otherwise included "co-owner" language in his will. *Id.* at 25, 27. Gatty thus contends that when Decedent died, the Agreement had been modified, she reacquired her interest in the Property, the Property was owned by Decedent and her as tenants in common, and it passed to her under the will. *Id.* at 12-13, 16, 23-24.

The orphans' court rejected Gatty's assertion that she and Decedent were co-owners as tenants in common when Decedent died. Orphans' Court Opinion, 10/23/2023, at 3. The court explained that such a claim disregarded the language of the Agreement, "which assure[d] the exclusivity of ownership

acquired by [Decedent] and which, repeatedly, confine[d] the relief available to [] Gatty for any breach of the agreement by [Decedent] to damages." *Id.* at 3. The orphans' court found that the terms of the Agreement were "explicit in the remedies" available to Gatty if it was breached. *Id.* at 4. It did not find any terms that "Gatty secured a retention of any ownership" or "any credible indication that the parties mutually understood and intended reacquisition of ownership by [] Gatty following the divorce." *Id.* at 4. The orphans' court further found no indication that when the National City Bank Mortgage was executed, "Gatty and Decedent mutually understood and agreed that a consequence of executing the document was either an abandonment or an amendment of" the Agreement. *Id.* The orphans' court also rejected Gatty's argument that the National City Bank Mortgage constituted a modification or novation of the Agreement. *Id.* at 5. It noted that the National City Bank Mortgage differentiated between an owner and borrower and the different obligations of each. *Id.* Finally, the orphans' court found that Gatty's reliance on the "co-owner" language in Decedent's will to be erroneous because it disregarded the Agreement's language assuring Decedent exclusive ownership of the Property. *Id.*

Our review of the record finds no abuse of discretion or error of law. Gatty's first argument—that Decedent's failure to refinance or sell the Property under paragraph six of the Agreement, and remove Gatty from any financial obligations or risk relating thereto, signifies her ownership rights in the

Property—ignores the plain language of the Agreement. Under paragraph six, Gatty and Decedent agreed that Decedent took sole ownership of the Property, subject to its debts, and Decedent agreed to refinance or sell the Property within one year and to indemnify and hold Gatty harmless for any claims arising out of Decedent's ownership. Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. C (Agreement, 6/2/2000, ¶ 6). Gatty and Decedent further agreed that Decedent retained equity in the Property and in exchange, Gatty received other consideration set forth in the Agreement. *Id.* In the event of Decedent's noncompliance with the one-year requirement to refinance or sell the Property, the remedy was **not** Gatty's retention of ownership. Rather, paragraph six plainly stated Gatty's remedy in the event of breach thereof was to file a petition to compel Decedent to refinance or sell.[2] *Id.*

---

[2] The orphans' court's opinion states that Gatty's remedy under the Agreement was damages. *See* Orphans' Court Opinion, 10/23/2023, at 3. We note that paragraph six of the Agreement contains language that lists remedies, including monetary judgment, available to Gatty in the event of Decedent's default in payment, but such language is not included with respect to Decedent's obligation to transfer, refinance, or sell the Property. *See* Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. C (Agreement, 6/2/2000, ¶ 6). Paragraph fifteen of the Agreement, however, does provide that if a party breaches the agreement, the other may sue for damages. *Id.* at Ex. C (Agreement, 6/2/2000, ¶ 15). This distinction does not alter our disposition. *Commonwealth v. Richards*, 284 A.3d 214, 221 (Pa. Super. 2022) (en banc) ("[W]here the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself.") (citation and quotation marks omitted).

For the same reasons, we are unpersuaded by Gatty's argument that she has ownership rights in the Property because Decedent failed to remove her as owner when the Property was refinanced in 2004. Again, the remedy for Decedent's noncompliance under paragraph six was not Gatty's reacquisition or retention of ownership rights in the Property—it was to pursue an action to compel Decedent's performance under the Agreement. *Id.* That Decedent refinanced the mortgage to the Property in 2004, instead of within the one-year period set forth in paragraph six, and when doing so, failed to remove Gatty as an owner, does not change the result—the remedy remained the same under the terms of the Agreement. *See id.*

Lastly, we disagree with Gatty that the National City Bank Mortgage modified the Agreement or constituted a novation. A novation, also known as a substituted contract, extinguishes all rights and duties under the earlier agreement. ***Buttonwood Farms, Inc. v. Carson***, 478 A.2d 484, 486 (Pa. Super. 1984).

> The doctrine of novation applies where: (i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new.

***First Lehigh Bank v. Haviland Grille, Inc.***, 704 A.2d 135, 138 (Pa. Super. 1997) (citing ***Buttonwood Farms***, 478 A.2d at 486). "The party asserting a novation or substituted contract has the burden of proving that the parties intended to discharge the earlier contract." ***Buttonwood Farms***, 478 A.2d

- 11 -

at 486 (citations omitted). The parties' intent to effect a novation may be established by writings, words, conduct, or all three. *Id.* at 487 (citations omitted); *see also First Lehigh Bank*, 704 A.2d at 138-39 ("[W]hether a contract has the effect of a novation primarily depends upon the parties' intent. The party asserting its existence bears the burden of demonstrating the parties had a meeting of the minds.") (quotation marks and citation omitted).

Modification of the Agreement was governed by paragraph nineteen, which provided that any modification must be in writing and formally executed. Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. E (National City Bank Mortgage, 2/23/2004). Although the National City Bank Mortgage was in writing, executed by the parties, witnessed, and acknowledged by a notary public, there is no indication within the four corners of the document—nor anywhere else in the record for that matter—that the National City Bank Mortgage modified the Agreement, or that upon its execution, Gatty reacquired ownership rights in the Property that she had previously relinquished under the express terms of the Agreement. *See id.*; *see also* Gatty's Brief at 23, 26-27 (Gatty conceding that she gave up her interest in the Property when she executed the Agreement). Nor does Gatty dispute the provision in the Agreement wherein she relinquished her intestate rights in and to Decedent's estate and any right of election against the will.

Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. C (Agreement, 6/2/2000, ¶ 4).

Additionally, the record does not contain evidence that by executing the National City Bank Mortgage, it was the parties' intent to displace any aspect of the Agreement. At most, the National City Bank Mortgage demonstrates Decedent's failure to comply with his obligation under paragraph six of the Agreement, for which the remedy was, as noted above, specific performance.

Moreover, the Agreement spans five pages and contains twenty-three separately numbered paragraphs, covering various issues separate and distinct from the provisions of paragraph six relating to the Property. ***See generally*** Petition to Determine Ownership of Estate Property, 4/17/2023, at Ex. C (Agreement, 6/2/2000). For example, pursuant to paragraphs eight and ten, respectively, Gatty and Decedent agreed to waive any claims for spousal support, alimony pendente lite, and alimony, and any rights to the other's retirement benefits. ***Id.*** They further agreed pursuant to paragraph twelve to assume certain debts as outlined in an exhibit to the Agreement. ***Id.*** Additionally, as noted, Gatty and Decedent each relinquished their inchoate intestate rights in and to the other's estate and their rights of election against the other's will. ***Id.*** Nothing in the National City Bank Mortgage addressed these topics, nor is there any indication that Gatty and/or Decedent intended the National City Bank Mortgage to discharge the Agreement, that it served

as its substitute, or that they consented to the extinction of the Agreement and replacement by the National City Bank Mortgage.

Certainly, refinancing the Property in 2004 with a new mortgage that listed both Gatty and Decedent as owners was inconsistent with Decedent's obligation to transfer the Property to his name only, as was unquestionably required under paragraph six of the Agreement. Obtaining a note solely in Decedent's name at the time of refinancing, however, was consistent with paragraph six, i.e., Decedent retained ownership in the Property subject to its debts secured by a mortgage, lien, or other bona fide legal encumbrances. For these reasons, and because the record presents no clear evidence that Gatty and Decedent intended for a standard mortgage agreement, authored by the lender on its own form, to displace a marital settlement agreement between two individuals negotiated and executed years earlier, we conclude that no novation existed. *See Buttonwood Farms*, 478 A.2d at 436 (holding no novation existed where new agreement failed to expressly provide it superseded the original agreement, did not contain all the essential terms of original agreement, could not be read without reference to the original agreement, and the record lacked evidence of consent by the parties).

The record supports the orphans' court conclusion that the Agreement was not modified, its language is controlling, and there was no novation. We therefore affirm the orphans' court order finding Gatty retained no ownership interest in the Property.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/21/2024