J-S32030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BUCKINGHAM PARTNERS, L.P., SUCCESSOR BY ASSIGNMENT TO SHARON BANK F/K/A SHARON SAVINGS BANK | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| | : | No. 958 EDA 2024 |
| JOANN SMALL T/A JASCO-JEMS AND JAMES E. SMALL, III | : : : : : | |
| APPEAL OF: JOANN SMALL | : | |

Appeal from the Order Entered March 1, 2024
In the Court of Common Pleas of Delaware County
Civil Division at No:  CV-2021-002159

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 24, 2025**

Appellant, Joann Small, appeals from the March 1, 2024 order denying her "petition to vacate void judgment" entered against her in this mortgage foreclosure action.  We affirm.

The trial court set forth the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> This court determined that Appellant and her prior husband had obtained a commercial line of credit [the "Line of Credit"] from Sharon Savings Bank in the amount of $20,000.00 on or about April 17, 2006, Loan # 1729371871.  [The Line of Credit] was secured by a mortgage, on the property located at 292 Jackson Avenue, Lansdowne, PA, 19050, that was recorded on May 5, 2006.  [The Line of Credit] was increased by ten thousand dollars ($10,000) for a total loan amount of thirty thousand dollars ($30,000) on October 20, 2006, pursuant to a change in terms

agreement. […] Under the [change in terms agreement] the security pledged remained unchanged (the residence at 292 Jackson Avenue, Lansdown, Pennsylvania 19050).

A separate business loan was made on October 27, 2006 to Appellant by Sharon Savings Bank, in the amount of fifty-six thousand seven hundred dollars ($56,700) […] loan # 3388633138 [the "Business Loan"]. Some of the proceeds from [the Business Loan] were used to paydown the principal balance for [the Line of Credit].

Appellant's conduct following this partial paydown of [the Line of Credit] by [the Business Loan] demonstrated to the undersigned, that the parties did not intend for [the Line of Credit] to be satisfied. [The Business Loan] did not replace [the Line of Credit], but merely restructured [the Line of Credit] by the partial paydown of the principal. [The Line of Credit] was kept open so the funds remaining were available for Appellant to draw upon. Following the partial pay down from [the Business Loan], [Appellant] fully drew on the available principal from [the Line of Credit]. Appellant failed to repay the amount due and owing on [the Line of Credit].

Trial Court Opinion, 3/8/24, at 3-4.

The record supports the trial court's findings of fact. The underlying foreclosure action involved the Line of Credit which, as explained above, was secured by Appellant's property in Delaware County.[1] The Business Loan closed only one week after the change in terms agreement for the Line of Credit and was secured by property in Philadelphia County. Appellant used some of the proceeds of the Business Loan to pay the Line of Credit down to an outstanding balance of about $9,000. N.T. Hearing, 1/18/24, at 54, 61-62. But the Line of Credit remained open, and Appellant subsequently drew

_____

[1] The Business Loan was marked satisfied on January 6, 2020.

on it up to the $29,000.00 of its $30,000 limit. *Id.* at 49, 54. Appellant eventually paid off the Business Loan. Her default on the Line of Credit led to this foreclosure action against her Delaware County property. *Id.* at 55-56.

The parties proceeded to a bench trial on June 6, 2023, which resulted in a June 15, 2023, judgment in foreclosure on the Delaware County property and in the amount of $74,545.80, including attorney's fees. Appellant followed with a petition for reconsideration on July 10, 2023, and a petition to open the judgment on September 22, 2023, both of which the trial court denied. On November 17, 2023, Appellant filed a notice of appeal to this Court from the order denying her petition to open the judgment, but voluntarily discontinued that appeal on December 6, 2023.

The instant appeal arises from the denial of Appellant's December 12, 2023 "petition to vacate void judgment" in which Appellant alleges that the judgment in foreclosure was void when entered because the Business Loan instrument indicates the parties' intent to effect a novation of Appellant's prior debts under the Line of Credit. The trial court conducted a hearing on the petition on January 18, 2024. After taking the matter under advisement, the trial court entered an order on March 1, 2024, denying Appellant's petition to strike the judgment. This timely appeal followed.

Appellant presents four questions:

> 1. Did the plain language of the [Business Loan instrument] which secured a principal in the amount of $56,700 and 'every other indebtedness of any and every kind now and hereafter owing from Mortgagor and Joann Small to Lender, howsoever created or

arising …' operate as a novation such that the initial indebtedness of $30,000 [on the Line of Credit] was subsumed (i.e. refinanced by [the Business Loan]?

2. Did the trial court err in admitting into evidence over defense counsel's hearsay objection a certain business record having a 'Business Date of October 09, 2013'?

3. By admitting a hearsay document into evidence which should have been excluded, did the trial court abuse its discretion by making/creating a finding that contravened the plain language of the [Business Loan instrument]?

4. Did the trial court abuse its discretion in finding that the consumer protection statutes advanced by [Appellee Buckingham Partners, L.P.] (during the case and in the Petition to Vacate Void Judgment to include the Truth in Lending Act) were inapplicable?

Appellant's Brief at 3-4.

Appellant argues that the judgment in mortgage foreclosure entered against her was void and therefore subject to being stricken from the record. She claims that the Business Loan instrument contained language that resulted in a novation of her obligation under the Line of Credit. Appellant argues that the trial court, after considering the evidence put forth at the January 18, 2024, hearing, should have found that the foreclosure judgment was void.

In support of her argument, Appellant relies on cases governing petitions to open and/or strike **default** judgments. For example, she cites **Erie Ins. Co. v. Bullard**, 839 A.2d 383 (Pa. Super. 2003), in which this Court explained that "a petition to strike a default judgment should be granted where a fatal defect or irregularity appears on the face of the record." **Id.** at 386 (emphasis added). This Court has explained:

A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record. [A] petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief. A fatal defect on the face of the record denies the prothonotary the authority to enter judgment. When a prothonotary enters judgment without authority, that judgment is void ab initio. When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a default judgment, a court may only look at what was in the record when the judgment was entered.

***Digital Comm's Warehouse, Inc. v. Allen Invs., LLC***, 223 A.3d 278, 284–85 (Pa. Super. 2019). "A judgment is void on its face if one or more of three jurisdictional elements is found absent: jurisdiction of the parties; subject matter jurisdiction; or the power or authority to render the particular judgment." ***Id.*** at 285.

The foregoing reveals at least three fundamental problems with Appellant's argument. First, she does not seek to strike a default judgment.[2] Rather she seeks to void a judgment in foreclosure entered after the matter was litigated at trial. The exclusive focus at trial was Appellant's default on the Line of Credit. She never made the Business Loan instrument an issue, as is evident from the transcript of the hearing on the instant petition:

> [Appellee's Counsel]: They – what occurred here is you have the $20,000 [Line of Credit] which went to a $30,000 [Line of Credit] and that's what we were here [sic], and we litigated,

_____

[2] The procedure for opening or striking a confession of judgment for money is likewise inapplicable here. ***See*** Pa.R.C.P. 2959.

- 5 -

spent an entire day litigating over that issue and [Appellant] had counsel and she had two years of discovery, and this issue of the $56,700 [Business Loan] was never an issue. It was never an issue at the discovery, it was never an issue on the motions for summary judgment, it was never an issue before Your Honor at all.

THE COURT: Yeah, my notes reflect that it was never an issue.

N.T. Hearing, 1/18/24, at 16. With the instant petition, Appellant attempts to raise an issue that could have been litigated at trial but was not.

Second, Appellant does not argue that the trial court lacked jurisdiction over the parties, subject matter jurisdiction, or the power to enter the underlying judgment in foreclosure. Rather, she argues, based on the Business Loan instrument, that the parties evidenced their intent for the debt under the Line of Credit to be extinguished. Third, and finally, the intent of the parties as to the alleged novation in the Business Loan instrument required a hearing on the instant petition at which the parties presented witnesses and documentary evidence. Appellant's petition to void the foreclosure judgment is not based on a defect apparent from the face of the record. Rather, a new record had to be created at a hearing. For all these reasons, we conclude that Appellant's petition was procedurally improper, and that Appellant has not established any valid basis upon which the trial court had jurisdiction to revisit the judgment in foreclosure.

Regardless, we explain briefly that Appellant's novation argument would not prevail. "The doctrine of novation, or substituted contract, applies where:

(i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new." *First Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 138 (Pa. Super. 1997).[3] "[W]hether a contract has the effect of a novation primarily depends upon the parties' intent. The party asserting its existence bears the burden of demonstrating the parties had a 'meeting of the minds.' *Id.* at 138-39.

> The Business Loan instrument provides in part:
>
> INDEBTEDNESS. This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from Mortgagor and Joann Small to Lender, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter referred to as the "Indebtedness").

N.T. 1/18/24, at Exhibit D-2. Appellant claims this language extinguished her obligations under the Line of Credit. But there is nothing in this language, which is referencing a loan secured by Appellant's Philadelphia County property, that expressly extinguishes outstanding debt secured by a separate property in Delaware County. Further, the record confirms that neither party

---

[3] We note that in *Haviland Grille*, the novation issue was submitted to the jury at trial, challenged in post-trial motions, then raised on direct appeal.

intended that result. As explained above, Appellee held the Line of Credit open after the parties executed the Business Loan instrument, and Appellant subsequently drew on it up to $29,000.00 of the $30,000.00 limit. N.T. Hearing, 1/18/24, at 49, 54. This conduct demonstrates no meeting of the minds as to a novation of Appellant's obligation to repay her debt under Line of Credit. To hold otherwise would be to arrive at an absurd result: that Appellee intended, by the Business Loan instrument, to permit Appellant to continue to draw on the Line of Credit with no repayment obligation.

Appellant's second issue is that the trial court erred in admitting into evidence hearsay evidence in the form of a business record dated October 9, 2013. This document evidenced Appellant's continued draws on the Line of Credit after the parties executed the Business Loan instrument. Pennsylvania Rule of Evidence 803(6) permits records of regularly conducted activity:

(6) **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). At the hearing, Appellee produced an officer who testified that the document in question was a record of regularly conducted business, that creation of such records was a regular part of the banking business and that its creation was contemporaneous to the transactions it documented. N.T. Hearing, 1/18/24, at 51-52. Appellant's objection to the document was frivolous.

Appellant's third argument—that admission into evidence of the Line of Credit transaction record enabled the trial court to make an erroneous finding that the parties never intended a novation—fails because it depends on the success of Appellant's second argument.

Finally, Appellant argues that the trial court erred in rejecting Appellant's argument that Appellee violated certain federal consumer protection laws. She relies on 12 C.F.R. § 1003.2(p):

(p) Refinancing means a closed-end mortgage loan or an open-end line of credit in which a new, dwelling-secured debt obligation satisfies and replaces an existing, dwelling-secured debt obligation by the same borrower.

12 C.F.R. § 1003.2(p). Chapter X of Title 12 of the Code of Federal Regulations establishes the Consumer Financial Protection Bureau, and Part 1003 governs home mortgage disclosures. Appellant posits that the purpose of the Business Loan was to refinance her existing debt under the Line of

Credit. Appellant's Brief at 24. She invites the conclusion that the Business Loan replaced and satisfied her Line of Credit debt, as per § 1003.2(p).

We are cognizant that a mortgage refinance often satisfies and replaces the mortgagor's obligations under an existing loan instrument, but the general definition of "refinance" in § 1003.2(p) does not alter the specific facts of this case. The Business Loan did not satisfy Appellant's debt under the Line of Credit. She used some of the proceeds of the former to pay her debt under the latter down to $9,000.00. The Line of Credit remained opened. Appellant subsequently drew against it and defaulted, resulting in this foreclosure action.

In summary, Appellant's "petition to vacate void judgment" was procedurally improper, and her substantive arguments challenging the trial court's decision lack merit. We therefore affirm the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/24/2025